UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

FILED
MAR 22 2010
Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ANDRE CHREKY, | ) |
| | ) Case No. 10-00268 |
| Debtor. | ) |
| | ) |

### EMERGENCY MOTION OF JENNIFER THONG, PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE, TO DISMISS THE PETITION FILED IN BAD FAITH

Jennifer Thong ("**Ms. Thong**"), by and through her undersigned counsel, respectfully submits this emergency motion (the "**Motion**"), pursuant to section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") and Rules 1017 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order dismissing the chapter 11 case of Andre Chreky, the above-captioned debtor (the "**Debtor**") for cause. In support of this Motion, Ms. Thong states as follows:

### I. Jurisdiction

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief requested in this Motion is section 1112(b) of the Bankruptcy Code and Rules 4001 and 9014 of the Bankruptcy Rules.

### II. Background

3. On March 19, 2010 (the "**Petition Date**"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. When the Debtor filed his petition, he, and his alter ego business entities, Andre Chreky Salon (the "**Salon**") and SPAC, LLC ("**SPAC**", and together with the Debtor and the

Salon, the "**Defendants**") were less than 72 hours away from facing a jury before the Honorable Royce C. Lamberth ("**Chief Judge Lamberth**") in the United States District Court for the District of Columbia (the "**District Court**") for their willful and malicious conduct in violation of the District of Columbia Human Rights Act, D.C. Code §§ 1-2501, *et seq.* (the "**DCHRA**").

5. Specifically, on September 22, 2006, Ms. Thong initiated litigation against the Debtor and the Salon in the Superior Court of the District of Columbia, which was subsequently removed to the District Court under the caption Thong v. Chreky, *et al.*, Case No. 06-1807, and amended to add SPAC as a defendant (the "**Litigation**"). In the Litigation, Ms. Thong alleges that the Defendants subjected her to unwelcome sexual touching, sexual demands, vulgar and sexually explicit remarks, threats, ridicule, sexual assaults, intimidation and other abuse. She further alleges that Defendants retaliated against her when she rejected the Debtor's sexual propositions by subjecting her to escalated levels of harassment and abuse, deliberately denying her income opportunities, removing clients from her schedule, blocking her books, withholding her tips, and assigning her to stock shelves or perform inventory. Ms. Thong's claims against the Defendants are of the most serious nature and arise out of conduct which, *inter alia*, could easily be classified as criminal sexual assault.

6. The Litigation has been active for approximately three-and-a-half years. All discovery has been completed and Chief Judge Lamberth has ruled on all dispositive motions. A ten-day jury trial in the Litigation is set to begin on March 22, 2010 at 10:00 a.m. (the "**Trial**").

7. The Trial is scheduled to follow a companion trial in which another plaintiff, Ronnie Barrett, suffered similar, though far less egregious, misconduct by the Debtor (the "**Barrett Litigation**"). From February 16, 2010 to March 8, 2010, Chief Judge Lamberth presided over a jury trial in the Barrett Litigation. On March 8, 2010, the jury rendered a verdict

against the Debtor and the Salon in the amount of $2.3 million, awarding Ms. Barrett $300,000 in compensatory damages and $2 million in punitive damages. (the "**Barrett Judgment**").

8. During the Barrett Litigation, on February 23, 2010, the Debtor stipulated that the Defendants' total net assets were "$6 million, plus such additional value, if any, as you may determine has been proved by the plaintiff, including for any goodwill or intellectual property, such as customer lists owned by the salon." Moreover, the Debtor was deposed on January 25, 2010 solely on his net worth and financial stability in anticipation of the Litigation and the Barrett Litigation, in conjunction with which he provided a summary of his financial accounts indicating that, as of January 5, 2010, the Debtor had $8,471,920.19. The Debtor also testified that he owns two houses and the Salon building, without mortgages; various property and equipment at the Salon; four cars – a Porsche, a BMW, a Ford, and a Lexus – and a boat, free and clear of any loans. Additionally, the goodwill of the Debtor's business (i.e., customer lists, and proprietary data) is valued by the Debtor at approximately $16 million. The Debtor testified to the continued existence of these assets on January 25, 2010 and the stipulation was read into evidence in the Barrett Litigation on February 23, 2010.

9. Upon the completion of the Barrett Litigation, the Defendants filed for a continuance of the Trial, which Ms. Thong opposed. On March 16, 2010, Chief Judge Lamberth held a Final Pretrial Conference (the "**Final Pretrial Conference**"), at which he indicated that the Defendants' motion for a continuance would be denied and addressed all outstanding motions *in limine* with the intention of commencing the Trial on March 22, 2010, as planned. At the Final Pretrial Conference, Debtor's counsel represented that the Debtor would be posting a bond pending his appeal of the Barrett Judgment. On March 19, 2010, Chief Judge Lamberth

issued a Final Pretrial Order, ruling on all outstanding motions, motions *in limine* and objections to witnesses, including denying the Defendants' motion for a continuance.

10. A detailed description of the Litigation, as well as the Debtor's financial condition, is set forth in the *Declaration of Jonathan G. Rose in Support of Jennifer Thong's Emergency Motions*, filed concurrently herewith (the "**Rose Declaration**") and incorporated herein by reference.

### III. Relief Requested and Basis Therefor

11. By this Motion, Ms. Thong requests that the Court enter an order dismissing the Debtor's chapter 11 case because it was commenced in bad faith as a litigation tactic to delay the Litigation. Section 1112(b) of the Bankruptcy Code provides that the court may dismiss a chapter 11 case for "cause." See 11 U.S.C. § 1112(b); see also In re Fay Assocs. P'ship, 225 B.R. 1, 8 (Bankr. D.D.C. 1998) (Teel, J.) ("11 U.S.C. § 1112(b) permits any 'party in interest' to seek to dismiss," if to do so "'is in the best interest of creditors and the estate, for cause.'") (internal citations omitted). In general, "[w]hile chapter 11 contains no specific requirement that a petition be filed in 'good faith,' courts have consistently imposed such a requirement by way of implication. The requirement has been inferred from the language in section 1112(b) that permits conversion or dismissal 'for cause.'" In re Franklin Mortg. & Inv. Co., 143 B.R. 295, 298-299 (Bankr. D.D.C. 1992) (Teel, J.). As this Court has explained, "the doctrine of 'good faith' is a safeguard against abuse and misuse of process which has been established and accepted as part of bankruptcy philosophy (either by statute or by decision) for almost a century." Id. at 299 (internal citations omitted). In determining whether a case has been filed in bad faith, "[t]he court must look to the totality of all the facts and circumstances." Id. Bad faith "may be inferred from the surrounding circumstances. The court's evaluation of the debtor's

motive in filing its petition is central to the determination of good faith." Id. In this case, cause exists to dismiss the Debtor's chapter 11 case because it was filed in bad faith.

### A. The Petition Should Be Dismissed As Filed In Bad Faith Because It Is Clearly A Litigation Tactic Filed For The Primary Purpose Of Delaying Trial

12. Dismissal of the Debtor's chapter 11 case is warranted because it was filed for the sole purpose of delaying the Trial, which was scheduled to begin less than 72 hours after the petition was filed. Specifically, "because filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within 'the legitimate scope of the bankruptcy laws,' . . . courts have typically dismissed Chapter 11 petitions under these circumstances." In re SGL Carbon Corp., 200 F.3d 154, 165 (3d Cir. 1999) (quoting In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994)). Thus, "[w]here the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." In re 15375 Memorial Corp., 589 F.3d 605, 625 (3d Cir. 2009) (internal citations omitted); see also In re Silberkraus, 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000) ("[I]t constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in nonbankruptcy forum -- whether that nonbankruptcy forum is a state court or a federal district court."); Furness v. Lilienfield, 35 B.R. 1006, 1013 (Bankr. D. Md. 1983) ("The Bankruptcy provisions are intended to benefit those in genuine financial distress. They are not intended to be used as a mechanism to orchestrate pending litigation. This Court finds that [debtor] filed his petition for bankruptcy with the intent to abuse the judicial process, and that it should, therefore, be dismissed.").

13. An analogous situation was faced by the Court in In re St. Paul Self Storage L.P., where the debtor filed a petition under chapter 11 of the Bankruptcy Court just one day prior to a hearing on the opposing party's discovery motion. 185 B.R. 580, 582 (B.A.P. 9th Cir. 1995).

The bankruptcy court held that the "Debtor's purpose in filing its petition was not to effectuate a reorganization of its business, but was a litigation tactic." Id. at 583. The Ninth Circuit's Bankruptcy Appellate Panel found that cause existed for dismissal section 1112(b) of the Bankruptcy Code because "[s]hortly before trial, Debtor filed a chapter 11 petition. The timing of the petition and the unsuccessful progress of the [] litigation strongly suggests Debtor's intent to use the bankruptcy code as a means to escape to a forum which it perceived to be more friendly." Id.

14. As set forth in more detail in the Rose Declaration, the Debtor's petition was filed on the last business day before trial in the Litigation was scheduled to begin. See Rose Declaration at ¶ 3. At the Final Pretrial Conference, held less than 72 hours before the filing of the petition, Debtor's counsel gave no indication that the Debtor was preparing to file for bankruptcy or that he lacked the means to satisfy the Barrett Judgment. See id. at ¶ 33. In fact, Debtor's counsel stated that Debtor was preparing to file a bond in order to appeal the Barrett Judgment. See id. Thus, just 72 hours before the commencement of the Debtor's case, there was no indication that the Debtor intended to file for bankruptcy. Then, at that same pretrial conference, Chief Judge Lamberth denied the Debtor's motion to continue the trial. See id. By filing his petition, the Debtor is simply trying to obtain the delay imposed by the automatic stay that he could not receive from Chief Judge Lamberth. Therefore, as Debtor has filed his petition for the primary purpose of using it as a litigation tactic to delay Ms. Thong's day in court, it is respectfully submitted that the petition should be dismissed.

### B. The Petition Should Be Dismissed As Filed In Bad Faith Because The Debtor Is Financially Healthy

15. Further evidence of the Debtor's bad faith is the financial strength he demonstrated just weeks prior to the commencement of his bankruptcy case. Courts have

consistently dismissed chapter 11 cases filed by financially healthy petitioners with no need to reorganize under the protection of the Bankruptcy Code. See e.g., SGL, 200 F.3d at 166. For example, in SGL, the debtor filed a chapter 11 case in order "to protect itself against excessive demands made by plaintiffs in civil antitrust litigation and in order to achieve an expeditious resolution of the claims against it." Id. at 157. The debtor there stated that chapter 11 protection provided the most effective and efficient means for resolving its claims, notwithstanding the fact that the debtor was financially healthy. See id. The SGL court dismissed the debtor's case, noting that "[c]ourts . . . have consistently dismissed Chapter 11 petitions filed by financially healthy [petitioners] with no need to reorganize under the protection of Chapter 11." Id. at 166; see also Fay Assocs., 225 B.R. at 5 (citing to "the debtor's financial status" as one of the factors which the court should consider in determining whether or not good faith exists) (internal citations omitted); Furness, 35 B.R. at 1009 ("Chapter 11 was designed to give those teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability.")

16.    Here, as detailed in the Rose Declaration, the Debtor is *not* in any kind of financial distress. See Rose Declaration at ¶¶ 35-41. The Debtor holds $8,471,920.19 in liquid assets. See Rose Declaration at ¶ 36. In addition, the Debtor also owns real property worth approximately $4.5 million; property at the Salon worth approximately $140,000; four cars, including a Porsche, BMW, and Lexus, free and clear of any loans; and a boat free and clear of any loans. See id. at ¶¶ 37-38. With these assets, the Debtor's net worth was, at a minimum, in excess of $13 million. See id. at ¶¶ 35-38. The Debtor has also estimated the goodwill of his business as worth approximately $16 million, which further increases the Debtor's net worth to approximately $29 million. See id. at ¶ 39. It is also believed that the Debtor's financial

statements fail to account for large amounts of cash which Debtor receives as tips from his clients. See id. at ¶ 40.

17. In contrast, the only significant liability incurred by the Debtor since his net worth deposition is the $2.3 million judgment in the Barrett Trial. Moreover, at the pretrial conference held less than 72 hours before the filing of the petition, Debtor's counsel stated that the Debtor was preparing to file a bond in order to appeal the Barrett Judgment. See id. at ¶ 33. As such, there is simply no basis to conclude that the Debtor, with a positive net worth of between $11 million and $27 million, was in any financial distress, especially not in such distress as would warrant filing for bankruptcy, and that he needs the protection of chapter 11 to reorganize. Given that the Debtor is clearly not in financial distress, there is an independent basis to establish that the Debtor's petition was filed in bad faith to delay Ms. Thong's day in court, before a jury overseen by Chief Judge Lamberth, and in an attempt to avoid paying her potential judgment

### C. The Petition Should Be Dismissed As Filed In Bad Faith Because There Is Other Evidence Of The Debtor's Bad Faith

18. As set forth in detail in the Rose Declaration, there are substantial other bases to establish that the Debtor is acting in bad faith. First, following the Barrett Judgment against the Debtor and his alter ego co-Defendants, Debtor's counsel indicated to Ms. Barrett's counsel that the Debtor had proposed giving his assets to Goodwill instead of allowing Ms. Barrett to recover her judgment and attorneys' fees. See id. at ¶¶ 42-43.

19. Second, less than one week ago, undersigned counsel made a $3 million settlement offer to Debtor's counsel. Debtor's counsel promised to convey that offer to Debtor as soon as possible. As undersigned counsel advised Debtor's counsel, that offer would enable Debtor to retain over half of his assets after both Ms. Barrett's judgment and Ms. Thong's

settlement were paid. Undersigned counsel never received a response to that offer. Instead, Debtor filed for bankruptcy. See id. at ¶¶ 44-46.

20. Such behavior demonstrates that the Debtor is acting in an attempt to avoid paying Ms. Barrett and Ms. Thong the judgments to which they are entitled, and from allowing Ms. Thong an opportunity to present her claims to a jury in the Trial scheduled to begin March 22 before Chief Judge Lamberth. This conduct clearly rises to the level of bad faith, and establishes cause to dismiss the petition.

### No Prior Request

21. No prior motion for the relief requested herein has been made to this Court or any other court.

### Notice

22. Ms. Thong has provided due and proper notice of the Motion to (i) the Debtor and Debtor's counsel; (ii) the Office of the United States Trustee for the District of Columbia; (iii) all the creditors listed on the Debtor's list of 20 largest creditors; and (iv) all parties requesting notice.

### Conclusion

WHEREFORE, for the foregoing reasons, Ms. Thong respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, (i) dismissing the Debtor's bankruptcy case; and (ii) granting such other and further relief as may be just and proper.

Dated: March 22, 2010

Respectfully submitted,

By: /s/ [signature]
Jonathan G. Rose (D.C. Bar No. 446208)
Emily S. Costin (D.C. Bar No. 500201)
Richard S. Siegel (D.C. Bar No. 984943)
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005
Phone: (202) 218-0000
Fax: (202) 218-0020
jrose@sheppardmullin.com
ecostin@sheppardmullin.com
rsiegel@sheppardmullin.com

*Counsel for Ms. Thong*